**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TINA M. COMPO,

                                        Plaintiff,

                    - v -                                        Civ. No. 6:05-CV-973
                                                                    (FJS/RFT)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| CONBOY, McKAY LAW FIRM | LAWRENCE D. HASSELER, ESQ. |
| *Attorney for Plaintiff* | |
| 307 State Street | |
| Carthage, New York 13619 | |
| | |
| HON. ANDREW T. BAXTER | WILLIAM H. PEASE |
| United States Attorney for the | Assistant United States Attorney |
| Northern District of New York | |
| *Attorney for Defendant* | |
| P.O. Box 7198 | |
| 100 South Clinton Street | |
| Syracuse, New York 13261 | |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

In this action, Plaintiff Tina M. Compo moves, pursuant to 42 U.S.C. § 405(g), for review of

a decision by the Commissioner of Social Security denying her application for Disability Insurance

Benefits (DIB).[1] Based upon the following discussion, this Court recommends that the Commissioner's

decision denying Social Security benefits be **vacated and remanded**.

---

[1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 6 & 8. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

# I. BACKGROUND

## A. Facts

Born on March 11, 1970, Tina Compo was thirty-two years old when she filed for DIB.  Dkt. No. 5, Admin. Transcript [hereinafter "Tr."] at pp. 58-60.  Plaintiff completed high school and has past work experience as a route driver, auditor, retail manager, construction worker, tavern owner, bartender, manufacturing inspector, and cashier.  *Id*. at pp. 81-108.  The facts set forth in Compo's Brief under the heading "Medical Evidence," supplemented by those in the Commissioner's Brief under the heading "Summary of the Medical Evidence" are adopted.  Dkt. No. 6, Pl.'s Br. at pp. 2-10; *see also* Dkt. No. 8, Def.'s Br. at pp. 2-10 (incorporating Plaintiff's summary of the medical and other evidence with the exception of any inferences or conclusions asserted therein).  Generally, Compo alleges a disability due to lumbar degenerative disc disease, lumbar disc herniation, lumbar stenosis, status-post lumbar surgeries, and depression, all stemming from an injury she sustained while working at Walmart on December 6, 1999.  Tr. at pp. 68 & 82; Pl.'s Br. at p. 2.

## B. Procedural History

On October 3, 2002, Compo filed for DIB alleging a disability onset date of December 6, 1999.  Tr. at pp. 58-6.  The application was denied initially and on reconsideration.  *Id*. at pp. 20-25 & 28-31.  On December 29, 2003, Plaintiff requested a Hearing before an administrative law judge (ALJ), however, she waived her right to a personal appearance and instead requested that a decision be rendered based upon the written evidence.  *Id.* at p. 33.  On February 25, 2005, ALJ Alan L. Bergstrom issued an unfavorable decision against Compo.  *Id*. at pp. 9-19.  On June 2, 2005, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  *Id*. at pp. 4-6.

Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record.  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[2] to perform his or her past relevant work despite the existence of severe impairments.

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

20 C.F.R. § 404.1520(e).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy.  *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Bergstrom's Findings

Compo did not testify at a Hearing and the ALJ made a determination based upon the written evidence.  *See* Tr. at pp. 12 & 33.  In rendering his decision, the ALJ had Compo's medical records consisting of treatment reports and opinions from various treating and/or examining physicians including: 1) Arnold A. Zeal, M.D., Neurosurgeon, Treating Physician; 2) Paul J. Rubis, M.D., Consultive Examiner; 3) Edward K. Mark, Jr., M.D., Neurosurgeon Treating Physician; 4) Thomas W. Hobby, D.O., Treating Physician; 5) Michael Paul Pruitt, M.D., Psychiatrist; 6) Bipin R. Patel, M.D.; 7) Terry Lowe, Ed.D., Consultive Mental Examiner; 8) William Hornback, III, M.D., Orthopedic Consultive Examiner; 9) Irvin Blumenthal, M.D., Non-Examining Agency RFC Assessor; 10) Robert

Willingham, M.D., Non-Examining Agency RFC Assessor. *Id*. at pp. 131-276.

Using the five-step disability evaluation, ALJ Bergstrom found that 1) Compo had engaged in substantial gainful activity (SGA) since December 6, 1999, the alleged onset disability date, through September 2002, but not thereafter; 2) she has severe medically determinable impairments, namely lumbar degenerative disc disease, lumbar disc herniation, lumbar stenosis, and status-post lumbar surgeries, however, her depression is not severe; 3) her severe impairments did not meet nor medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she has the RFC to perform substantially all of the full range of sedentary work and, thus, cannot perform any of her past relevant work as a route driver, auditor, manager/stocker, construction worker, owner/operator of a tavern, bartender, or cashier; but, 5) based upon Compo's age, education, prior work experience, and RFC, a finding of "not disabled" was directed by the Medical Vocational Guideline Rule 201.28. *Id*. at pp. 12-19. After reviewing the administrative transcript, the Court finds that the ALJ did not apply the correct legal standards and his findings are not supported by substantial evidence of record.

### D. Compo's Contentions

Plaintiff contends that the ALJ's decision denying benefits should be remanded or judgment should be granted in her favor because (1) at Step One, the ALJ erroneously concluded that she had engaged in SGA for a period of time subsequent to her alleged disability onset; (2) at Step Three, the ALJ failed to find that her back impairments met Listing 1.04(A); (3) the ALJ improperly evaluated Plaintiff's credibility; (4) the ALJ erred in finding Plaintiff had the RFC to perform substantially all of a full range of sedentary work and, in turn, violated the treating physician's rule; and (4) at Step Five, the ALJ erred by solely utilizing the Medical Vocational Guidelines instead of garnering the testimony

of a vocational expert.  Dkt. No. 6.

### *1.  Step One - Substantial Gainful Activity*

Plaintiff contends that the ALJ erroneously determined that she had engaged in substantial gainful activity from the alleged onset date of her disability, December 6, 1999, through September 2002.  Pl.'s Br. at pp. 12-14.

In determining whether there has been substantial gainful activity, the Regulations state that several factors are to be considered.  *See* 20 C.F.R. §§ 404.1574(a)-(d).  These factors include: 1) the earnings derived from the work activity; 2) the amount of the earnings; 3) whether the work is in a sheltered or special environment; 4) any unsuccessful work attempts (*i.e.* working for six months or less due to the impairment); and 5) whether the work activity falls under certain volunteer programs.  *Id.*

Here, the ALJ stated that the "record indicates that the claimant was engaged in substantial gainful activity subsequent to her alleged onset date through September 2002."  Tr. at p. 13 (internal citation omitted).  The Commissioner concedes that the ALJ erred in rendering this finding.  Def.'s Br. at p. 14.  Defendant maintains that the records show that Plaintiff had not engaged in substantial gainful activity since November 2000.  *See id.* at p. 14 (citing Tr. at pp. 13, 18, 77, & 98).  Notwithstanding, the Commissioner contends that no prejudice befell Plaintiff because the ALJ correctly determined that she was not disabled, thus, there would be no need for a determination of the onset disability date.  *Id.*

Despite Defendant's stance as to the irrelevance of the ALJ's error, it is not entirely clear whether the mistaken SGA date affected the ALJ's consideration of medical evidence, a mistake further compounded by the ALJ's erroneous RFC analysis, as discussed below.  *See infra* Part II.D.3.  Such an error regarding her substantial gainful activity should be corrected upon remand.

### *2.  Step Three - Listed Impairment*

Plaintiff asserts that the ALJ erred in failing to find that her back conditions, including lumbar degenerative disc disease, lumbar disc herniation, lumbar stenosis, and status-post lumbar surgeries, met Listing 1.04(A).  Pl.'s Br. at pp. 14-16.

As stated previously, at Step Three of the sequential disability evaluation process, the ALJ must determine whether the claimant's conditions meet or equal the requirements for any impairment listed in Part 404 of the Social Security Regulations, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii). "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 404.1525(a).  If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience.  20 C.F.R. § 404.1520(a)(4)(iii).

The burden is on the plaintiff to present medical findings which show that his or her impairments match a listing or are equal in severity to a listed impairment.  *Zwick v. Apfel*, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998).  In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify.  *Sullivan v. Zebley*, 493 U.S. at 530.  To make this showing, the claimant must present medical findings equal in severity to all requirements which are supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1526(b).  Any abnormal physical findings must be shown to persist on repeated examinations despite therapy.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(H).  Furthermore, the medical reports should reflect physical limitations based upon actual observations and not just the

claimant's subjective complaints.  *Id.*

With regard to the back impairments, Listing 1.04(A) states that there must exist a disorder of

the spine resulting in compromise of a nerve root with:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of
> pain, limitation of motion of the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A) (2005).

A review of the medical record reveals that while Compo exhibited many of criteria above, she

did not experience <u>all</u> the criteria for the required duration.  20 C.F.R. §§ 404.1509 & 404.1525(c)(3)

-(c)(4).

In January 2000, Dr. Arnold Zeal found that Plaintiff had left central lumbar disc herniation at

L4-5 with nerve root and thecal sac impingement and small central disc protrusion/herniation at L5-S1.

Tr. at p. 133.[3]  Furthermore, in February 2001, Dr. Edward K. Mark diagnosed Plaintiff with having

a disorder of the spine, namely a herniated lumbar disc at L4-5 with spinal canal stenosis and neural

foraminal stenosis.  *Id*. at p. 150.  Additionally, in June 2002, it was noted that Plaintiff had spinal

stenosis at the L3-4 level.  *Id*. at p. 185.  Thus, the evidence establishes the presence of a spinal

disorder.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A) (noting that spinal disorders include

herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, and degenerative disc

disease).

Nevertheless, while Plaintiff may have been diagnosed with a spinal disorder, substantial

evidence supports the ALJ's finding that her impairment did not meet or equal the Listing criteria on

a sustained basis.  20 C.F.R. § 404.1525(d) (noting that a claimant's impairment "cannot meet the

---

[3] In October 2000, a nerve conduction study showed possible S1 nerve root dysfunction.  Tr. at p. 179.

criteria of a listing based only on a diagnosis."). In January 2000, Dr. Zeal found that her flexion at the waist was limited, there was marked weakness of the left foot and toe dorsiflexion, reflexes were brisk and equal bilaterally, and straight leg raising was positive. Tr. at p. 133. However, in March 2000, less than two months after her left L4-5 laminotomy with foraminotomy and diskectomy had been performed on January 27, 2000, Dr. Zeal stated that Plaintiff could walk well, flexion and extension were good, and straight leg raising was negative bilaterally. *Id*. at pp. 136-37 & 147. In November 2000 and February 2001, Plaintiff experienced a reoccurrence of a herniated lumbar disc at L4-5 and Dr. Mark noted that her sensory exam revealed hypoesthesia to pinprick over her left foot with intact sensation to all other modalities, normal reflexes, decreased strength in her left foot and toe, normal tone in all four extremities, and essentially normal gait. *Id*. at pp. 158 & 205-06.

In February 2001, Plaintiff underwent an extensive segmental decompression at L4-5. *Id*. at p. 150. A short time after the surgery in February 2001, Plaintiff stated her leg symptoms were completely resolved and that she was doing well. *Id*. at p. 196. Subsequently, in June 2001, Dr. Mark stated that Plaintiff had full range of motion of the lumbosacral spine in all dimensions. *Id*. at p. 192. In July 2001, Dr. Mark found that her strength was good, gait was normal, and sensation was intact. *Id.* In August 2001, Dr. Thomas W. Hobby stated that Plaintiff's sensation to touch and motor were intact and there was normal muscle tone in all extremities. *Id*. at p. 173. In November 2001, Dr. Mark examined Plaintiff and found that her reflexes were obtainable and symmetric, gait and strength were normal, and coordination was intact. *Id*. at p. 191. In April 2002, Dr. Hobby found that Plaintiff had normal muscle tone in all extremities and sensory to pain and touch was intact. *Id*. at p. 169. That same month, Plaintiff complained of pain after weight bearing activities. *Id*. at p. 188. However, Dr. Mark stated that while there was some tenderness in her mid-lumbar region, her gait, strength, mass,

and tone were all normal.  *Id*. at p. 188.  In May 2002, nerve conduction studies of the right lower extremity were normal.  *Id*. at p. 178.

However, by July 2002, Dr. Mark noted that there was disc herniation at the L5-S1 level and recommended another surgery.  *Id*. at p. 183.  In March 2003, Dr. William L. Hornback stated that Plaintiff had limited range of motion of her back, deep tendon reflexes were equal, and straight leg raising on the right was negative, but positive on the left.  *Id*. at p. 230.  In July 2003, Dr. Mark found that Plaintiff had normal strength, mass, tone, and gait.  *Id*. at p. 247.  He indicated that he was waiting for authorization for the surgery.[4]  *Id.*

Despite some indications that Plaintiff suffered from limited range of motion, muscle weakness, sensory loss, and positive straight-leg raising test, these symptoms did not last for any extended length of time.  In fact, Plaintiff's treating physicians noted on several occasions that after her surgeries, she had full range of motion of the lumbosacral spine in all dimensions, normal strength, negative straight leg raising, and intact sensation.  *See id*. at pp. 147, 169, 173, 188, 191-92, 196, & 247.  Thus, based upon substantial evidence in the record, the ALJ properly determined that Plaintiff's back impairment did not meet or equal Listing 1.04(A).  Accordingly, it is recommended that the ALJ's decision on this ground be affirmed.

### 3.  Plaintiff's Credibility

Plaintiff contends that the ALJ failed to properly evaluated her credibility when he found that she was not fully credible.  Pl.'s Br. at pp. 21-22.  Under 20 C.F.R. § 404.1529(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Symptoms such

---

[4] The surgery was ultimately scheduled for January 12, 2005.  Tr. at pp. 273-76.

as pain are to be considered by the ALJ at all steps of the disability determination.  20 C.F.R. §§ 404.1529 (a) & (d).  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id.* at § 404.1529(c).  Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work.  *Id.*  "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence."  *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged."  *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence."  *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1985)).  In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

    (i)      [The claimant's] daily activities;

    (ii)     The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;

    (v)    Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;

    (vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes

every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning [claimant's] functional limitations and restrictions due
to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ stated that the medical evidence could establish the existence of lumbar spinal impairments that could reasonably be expected to produce some of Plaintiff's symptoms and limitations.  Tr. at p. 15.  Plaintiff asserts that this finding essentially required the ALJ to issue a favorable credibility ruling.  Pl.'s Br. at p. 22.  However, Plaintiff is mistaken.  Before considering the factors set forth in 20 C.F.R. § 404.1529(c)(3), an ALJ ***must*** determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a).  Once the impairment is identified, the ALJ must assess the claimant's credibility based on the factors listed above and the medical evidence.  In finding that an impairment exists which is likely to cause pain, the ALJ merely followed the first step of the two-step analysis required under the Regulations.  *See* 20 C.F.R. § 404.1529; *Foster v. Callahan*, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

After stating that Plaintiff's symptoms could reasonably produce some of her limitations, the ALJ found that Plaintiff's allegation were not fully credible.  *Id.*  In making the credibility determination, the ALJ reported that Plaintiff was able to perform daily activities consistent with sedentary or light work, she engaged in actual work activity during the period of alleged disability, she was released to perform work after her surgeries, there were no significant side effects from medication, and her mood and sleep improved with medication.  *Id.*

The ALJ's conclusion is supported by substantial evidence in the record.  While there is no doubt that Plaintiff's back impairment causes some pain and limitations, it is for the ALJ to assess the claimant's credibility.  In this instance, Compo opted not to attend a hearing, thus depriving the ALJ

*-13-*

an opportunity to witness first-hand how her impairment affects her functional limitations.  Instead, the ALJ had to rely on Compo's written submissions which belie her allegations of totally disabling symptoms.  In her daily living questionnaire, Plaintiff stated that she prepares meals, does the laundry, vacuums, mops, washes dishes, goes grocery shopping, drives, and sometimes helps her husband get dressed.  Tr. at pp. 116-18.  Furthermore, Plaintiff noted that she had worked as a driver and vending machine stocker after she had her first back surgery.  *See id.* at pp. 188 & 191.  The medical evidence also confirms that Plaintiff's back impairment was not as severe as to preclude her from working or performing daily functions.  *See id.* at pp. 147, 169, 173, 188, 191-92, 196, 205-06, & 247.  For example, in February 2001, Plaintiff stated that her symptoms were fully resolved and she was doing well.  *Id.* at p. 196.  A few months later, Dr. Mark found she had full range of motion, normal gait, good strength, and intact sensation.  *Id.* at p. 192.  Even as late as July 2003, Dr. Mark stated that she had normal strength, mass, tone, and gait.  *Id.* at p. 247.

Based on the record as a whole, the ALJ's determination of Plaintiff's credibility is consistent with the evidence.  Moreover, despite Plaintiff's claim to the contrary, the ALJ considered and discussed the factors set forth under the Regulations.  Thus, the ALJ applied the correct legal standard, his decision is supported by substantial evidence, and it is recommended that the decision be affirmed on this ground.

### 3.  RFC

Plaintiff alleges that the ALJ's RFC assessment was not supported by substantial evidence in the record.  Pl.'s Br. at pp. 16-19.  Plaintiff further claims that the ALJ failed to properly consider the opinion of her treating physician, Dr. Mark.  *Id.* at pp. 16-19.

The Commissioner assesses a claimant's RFC as a basis for determining the particular types of

work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a).  If, based upon this RFC, the applicant can still perform the kind of work he or she performed in the past, they are deemed not disabled.  *Id*. at § 404.1520(e).  In determining RFC, the ALJ can consider a variety of factors including a physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments, even those not deemed severe.  *Id*. at § 404.1545(a).

Here, the ALJ determined that Plaintiff could frequently lift and/or carry ten pounds, stand and walk for up to thirty minutes intervals for a total of six hours in an eight-hour workday, and sit for an entire workday.  Tr. at p. 16.  The ALJ additionally found that Plaintiff could occasionally climb, crawl, kneel, crouch, stoop, bilaterally reach overhead, be exposed to cold temperature extremes, endure concentration of vibration to the lower back and rough terrain, but she could never climb ropes, ladders, or scaffolds.  *Id.*  The ALJ further acknowledged that Plaintiff's medication could limit her to occasionally tolerate complex tasks and instruction, but she was able to frequently tolerate detailed tasks and instructions.  *Id.*  The  ALJ then stated that Plaintiff could perform substantially a full range of sedentary work.[5]  *Id*. at p. 17.  In rendering this RFC assessment, the ALJ determined Compo's allegations were not fully credible.  The ALJ also did not indicate the weight accorded to Compo's treating physicians and instead, possibly, based his findings on the RFC Assessments completed by Non-Examining Agency Physicians Robert Willingham, M.D., and Irvin Blumenthal, M.D.  The ALJ did not explain why Compo's treating physicians' opinions were not afforded controlling, or any,

---

[5] Sedentary work involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

*-15-*

weight.

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).[6] However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability). The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his [or her] own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Furthermore, when weighing all medical opinions and assessing what weight to accord, "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. §§ 404.1527(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d

---

[6] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

Cir. 1998).  In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so.  20 C.F.R. § 404.1527(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinion is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of a treating physician's opinion.  *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987); *see also Barnett v. Apfel*, 13 F. Supp. 2d 312, 316-17 (N.D.N.Y. 1998).

Pursuant to Social Security Ruling (S.S.R.) 96-8p, an RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence.  S.S.R. 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *7 (S.S.A. 1996).  In arriving at Compo's RFC, the ALJ did not explain the evidence that supports his finding.  For example, the ALJ failed to extrapolate upon how he determined that Plaintiff was restricted in her inability to climb ropes, ladders, or scaffolds, and that she needed to stand and walk for thirty minute intervals.  Tr. at pp. 14-16.  In fact, the ALJ scarcely touched upon the limitations imposed by Plaintiff's treating physicians.  *See id.*  The ALJ's failure to explain the evidence relied upon in assessing RFC is grounds for a remand.  *See Viall v. Astrue*, 2008 U.S. Dist. LEXIS 8896, at *22-25 (N.D.N.Y. Feb. 5, 2008) (remanding for failing to explain on what specific evidence the ALJ relied upon in making the RFC determination).

Moreover, in determining the RFC, the ALJ wholly failed to discuss what weight was given to any opinion rendered, whether it be Plaintiff's treating physicians or any of the state agency consultants.  This was also in error.  *See Caserto v. Barnhart*, 309 F. Supp. 2d 435, 444-45 (E.D.N.Y. 2004) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) for the proposition that "the ALJ is required to articulate the weight that is given to treating doctor's conclusions").  Nor can this Court

ascertain that the ALJ applied the substance of the treating physician rule.  *Botta v. Barnhart*, 475 F. Supp. 2d 174, 188 (E.D.N.Y. 2007) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004) & *Van Dien v. Barnhart*, 2006 WL 785281, at *14 (S.D.N.Y. Mar. 24, 2006) for the proposition that while an ALJ should "comprehensively" set forth his reasons for the weight assigned to a treating physician's opinion, a remand is not required if it can be "ascertained from the entire record and the ALJ's opinion" that the ALJ "applied the substance" of the treating physician rule).  Remand is appropriate when there are gaps in the record, further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  *See Butts v. Barnhart*, 388 F.3d at 385; *Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999); *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Verginio v. Apfel*, 1998 WL 743706, at *2.  Furthermore, remand is warranted if "further findings or explanation will clarify the rationale for the ALJ's decision." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).  Given the errors committed in assessing Compo's RFC, remand is appropriate.

### 4.  *Step Five-Medical Vocational Guidelines*

Plaintiff claims that at Step Five, the ALJ erroneously utilized a direct application of the Medical Vocational Guidelines ("Grids")  instead of procuring the testimony of a vocational expert. Pl.'s Br. at pp. 20-21.  In light of the significant errors that occurred at earlier Steps in the ALJ's sequential disability evaluation, the ALJ's decision as Step Five was naturally affected.  This is especially true in light of the ALJ's failure to properly determine Compo's RFC, which was a determinative factor in the ALJ's decision that Compo could perform virtually all the contours of sedentary work, thus enabling him to rely on the Grids in determining that Compo was not disabled. On remand, depending on the renewed RFC assessment, it is possible that the use of a vocational expert

could prove helpful.[7]

### III.  CONCLUSION

In light of the foregoing discussion, the ALJ erred in determining that Plaintiff had performed substantial gainful activity through September 2002.  The ALJ also erred in assessing Plaintiff's RFC by failing to properly narrate how the determination was made and assign weight to be accorded to the opinions of the treating and examining physicians.  Thus, this Court recommends that the decision be vacated and remanded.

**WHEREFORE**, it is hereby

**RECOMMENDED,** that the Commissioner's decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with the above; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

---

[7] We note as an aside that the evidence in the record supports the ALJ's finding that Plaintiff did not suffer from any significant non-exertional impairment.  However, upon remand, a renewed RFC assessment could nevertheless show Plaintiff could not perform the full range of sedentary work, thus precluding complete reliance on the Grids.  Plaintiff argues that the ALJ acknowledged that her mental impairment had more than a minimal impact on her ability to work when he found that she could only occasionally entertain complex job tasks and instructions.  Pl.'s Br. at p. 20.  Plaintiff states that this constituted a severe non-exertional impairment triggering the need for the testimony of a vocational expert.  *Id.* However, Plaintiff misconstrues the ALJ's findings.  In his decision, the ALJ found that "claimant's ***perceived pain and side-effects of medication*** may limit her to occasionally tolerate complex tasks and instructions, but she is able to frequently tolerate detailed tasks and instructions."  Tr. at p. 16.  The ALJ did not opine that Plaintiff's mental condition was severe or in any way affected her abilities.  In fact, Plaintiff's treating physician, Dr. Mark, stated that her depression was temporary.  *Id.* at p. 19.  In any event, Plaintiff does not challenge the ALJ's finding that her depression was not severe and therefore, it would minimally, if at all, impact the need for a vocational expert's testimony.

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of*

*Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72, 6(a), & 6(e).


Date:   June 22, 2009
       Albany, New York

 

RANDOLPH F. TREECE
United States Magistrate Judge